OCT 2 9 2007  NH

OCT. 29, 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

JH

|  |  |
|---|---|
| NOE MARTINEZ individually, and on behalf of all others similarly situated, ) ) ) ) | **07CV 6112 JUDGE FILIP MAGISTRATE JUDGE COLE** |
| Plaintiff, ) ) | ~~CLASS ACTION~~ **COMPLAINT** |
| vs. ) ) | |
| Chicago Police Officer OFFICER JOHN HALEAS (STAR# 6719) and CITY OF CHICAGO, ) ) ) | **Jury Trial Demanded** |
| Defendants. ) ) | |

---

## CLASS ACTION CIVIL COMPLAINT

Plaintiff, NOE MARTINEZ, by his attorneys, as and for his complaint against Defendants Chicago Police Officer John Haleas and the City of Chicago, hereby alleges the following:

## NATURE OF THE ACTION

1.    Plaintiff, NOE MARTINEZ, brings this action both in an individual capacity against Defendant Officer Haleas and as a class action against Defendant City of Chicago on his own behalf and on the behalf of all other similarly situated persons who were arrested for Driving Under the Influence pursuant to 625 ILCS 5/11-501, et seq., by Chicago Police Officer John Haleas, Star # 6719. The class period for this action is two years.  Plaintiff's knowledge is based upon his own acts and Plaintiff's information and belief is based upon the investigation conducted by and through his counsel.

2.    This is a civil action brought pursuant to 42 U.S.C. §1983 to redress deprivation under color of law of Plaintiff Martinez's rights, as well as the rights of those similarly situated, as secured by the Constitution of the United States of America.

3.    As a result of police misconduct and abuse more fully described below, Plaintiff Martinez and those similarly situated, allege that Defendant Officer Haleas, acting under the color of law unlawfully seized and falsely imprisoned Plaintiff Martinez, wrote false police reports and complaints to misinform prosecutors of the basis for charges, withheld exculpatory evidence and instituted criminal proceedings without a lawful basis, in violation of Plaintiff's due process and other rights.

**JURISDICTION AND VENUE**

4.    This jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983, the Judicial Code, 28 U.S.C. §1331 and 1343 (a); the Constitution of the United States; and pendant jurisdiction as provided under U.S.C. §1367(a) for attendant claims and parties.

5.    Venue is properly laid in this district because Plaintiff and those similarly situated were arrested by Defendant in Cook County, Chicago, Illinois.

**THE PARTIES**

6.    Plaintiff Noe Martinez at all relevant times resided in the state of Illinois.

7.    Defendant Chicago Police Officer John Haleas is an employee of the Chicago Police Department and acted under his authority as a duly appointed police officer in the Chicago Police Department at all relevant times.

2

8.     Defendant City of Chicago is a municipal corporation organized under the
laws of the State of Illinois. It is responsible for the policies, procedures and
practices implemented through its various agencies, agents, departments, and
employees, and for injury occasioned thereby. It was the employer of
Defendant Officer Haleas at the time of the incidents complained of.

## BACKGROUND

9.     On June 7, 2007, Plaintiff Noe Martinez exited a lounge in Chicago, Illinois.

10.    Plaintiff Martinez walked to his car at 2010 N. Parkside to use his cell phone
which he had left in the car.

11.    Plaintiff Martinez removed his car keys from his pants pocket, opened the car
door, returned his keys to his pants pocket, and then entered the car.

12.    At no time while in the car, did Plaintiff Martinez remove the keys from his
pocket, put the keys or any key in the ignition, or by any means start the car.

13.    At this time Defendant Officer Haleas and another officer approached
Plaintiff's car and Defendant Officer Haleas immediately ordered Plaintiff to
exit the car.

14.    Plaintiff Martinez complied with the Officer's order and without assistance or
difficulty exited the car.

15.    Immediately upon exiting the car, Plaintiff Martinez was placed under arrest,
handcuffed and placed in Defendant Officer Haleas' squad car.

16.    At no time did Defendant Officer Haleas offer or administer any Standardized
Field Sobriety Performance Tests.

17.    Defendant Officer Haleas then transported Plaintiff Martinez to the twenty-

fifth (25th) Chicago Police District Station.

18.    Defendant Officer Haleas then administered the *breathalyzer test* and the
       result was "insufficient breath" (Which provides no result regarding blood
       alcohol content).

19.    Defendant Officer Haleas kept Martinez for approximately forty minutes and
       then returned Martinez's keys and released him from custody.

20.    Defendant Officer Haleas charged Martinez with 625 ILCS 5/11-501(a)(2),
       Driving Under the Influence of Alcohol.

21.    As a result of this arrest, Plaintiff Martinez's vehicle was impounded, and he
       had to pay approximately $1700.00 in order for it to be released.

22.    As a result of this arrest, Defendant Officer Haleas completed and signed
       under oath several reports containing perjured information; including Arrest
       Report, Law Enforcement Sworn Report, Warning to Motorists, Notice of
       Vehicle Impoundment and Alcohol/Drug Influence Report, as well as
       charging documents referred to as Uniform Traffic Citations.

23.    Defendant Officer Haleas alleged in those reports that he saw the Plaintiff
       Martinez driving the car, administered the Standardized Field Performance
       Tests and that Plaintiff refused to take the *breathalyzer test*.

### Culpability of City of Chicago

24.    The Cook County State's Attorney first learned that Defendant Officer Haleas
       ignored prescribed procedures and arrested suspects without probable cause
       on April 9, 2005, when employees of the Cook County State's Attorney
       observed personally an unlawful arrest of a citizen. Two days later,

supervisors within the Cook County State's Attorneys' Traffic Division were informed of the misconduct.

25.    On May 17, 2005, Cook County State's Attorneys' employees and agents became aware that in addition to falsely arresting DUI suspects, Haleas swore out false complaints and false police reports in support of the false arrests, leading to unwarranted prosecutions.

26.    On or about May 17, 2005, the City of Chicago's Police Department's Internal Affairs Division was informed of Haleas' misconduct. For more than two years, no action was taken.

27.    With this information that Defendant Officer Haleas falsely arrested individuals and swore out false police reports in support of those false arrests, the Chicago Police Department kept Defendant Officer Haleas on the street, allowing him to continue to make false arrests for nearly two years. In addition, the Cook County State's Attorneys' Traffic Division, which first uncovered Defendant Officer Haleas' wrongful conduct, continued to prosecute false DUI complaints sworn by him for two years.

28.    To this day, despite an ongoing State's Attorney Office investigation into possible felony charges of filing false reports, official misconduct and perjury, and despite a finding by the CPD's Internal Affairs Division that Defendant Officer Haleas did in fact falsely arrest citizens and then perjure himself on sworn complaints, Defendant Officer Haleas remains on active duty. Defendant Officer Haleas was finally removed from his fertile false-DUI beat on October 11, 2007.

29. In 2006, Defendant Officer Haleas made 341 DUI arrests. Almost all of the arrests were of Latino men, many of whom could not speak English, and for various reasons, including income, immigration status, and language barriers, were more vulnerable to false arrest and malicious prosecution than the average citizen.

30. In the last seven months of 2005, Defendant Officer Haleas made an estimated 200 DUI arrests. In the first eight months of 2007, Defendant Officer Haleas made an additional estimated 200 DUI arrests.

31. During this time, Defendant Officer Haleas continued to receive awards as "Top Cop" for piling up the unlawful DUI arrests.

32. On information and belief, even prior to the April 9, 2005 discovery, and during the subsequent 30 months, dozens, and maybe hundreds, of DUI suspects testified under oath that Defendant Officer Haleas ignored procedures and files false reports.

33. Despite the constant drumbeat of complaints from Defendant Officer Haleas' victims, and the corroboration from two Assistant State's Attorneys that witnessed the misconduct, Defendant Officer Haleas was allowed by the City of Chicago and its departments to continue falsely arresting suspects and to continue to perjure himself for more than 30 months.

34. Further, ignoring their own employees, Cook County States Attorney Traffic Division supervisors continued to prosecute Defendant Officer Haleas cases for more than 30 months.

35.    According to a spokesman for the Cook County States Attorney, it appears that the Chicago Police Department would have never taken action against Defendant Officer Haleas if not for the constant prodding by the States Attorney.

36.    On information and belief, the eventual suspension of Defendant Officer Haleas, and dropping of his cases, only occurred after the Police Department and the Cook County States Attorney learned that the issues regarding Defendant Officer Haleas' misconduct might become public.

37.    Such unwillingness to investigate police officers and on-duty misconduct by police officers has been a *de facto* policy of the City of Chicago, Chicago Police Department, Office of Professional Standards and Internal Affairs Division for years.  And, their conduct in the instant case mirrors their conduct in various similar cases of police misconduct.

38.    The City's inaction regarding Defendant Officer Haleas' repeated conduct is just one example of the City's widespread failure to properly control its officers.  The City of Chicago maintains a *de facto* policy, practice and custom of failing to train, supervise, discipline, and control its police officers.

39.    Municipal policy-makers have long been aware of the City's policy, practice and custom of failing to properly train, supervise and discipline its police officers:

    a.  In 1999, the then Superintendent of Police gave a speech highlighting problems with the City of Chicago's policies and practices. Superintendent Hilliard spoke specifically of the need for early detection

of potential problem officers, an effective disciplinary system, and officer accountability for misconduct.

b. In 2001, the Justice Coalition of Greater Chicago ("JCGC"), composed of more than a hundred community groups, concluded a study that the determined that the Chicago Police Department lacked many of the basic tools necessary to identify, monitor, punish and prevent police misconduct and brutality. The JCGC findings were presented to Mayor Richard Daley, the police superintendent, and the Chicago Police Board.

c. In the 2002 arbitration for the police contract with the Fraternal Order of Police, the City recognized that it needed a way to identify officers who engage in repeated misconduct, stating that "the current system is flawed because 'not sustained' complaints cannot be considered in new investigations, even if they might suggest a pattern of inappropriate conduct."

d. In 2003, a federal jury in the case of *Garcia v. City of Chicago*, No. 01 C 8945, 2003 WL 22175618, at *2 (N.D.Ill. Sept. 19, 2003) affirmed that the City's police misconduct investigations were systematically "incomplete, inconsistent, delayed, and slanted in favor of the officers" and as a result, fostered a culture of impunity within the Chicago Police Department. The "City of Chicago's custom and practice of not adequately investigating, disciplining, or prosecuting off-duty Chicago Police officers who use excessive force against individuals" was found to have directly caused the constitutional harm. Id. At *1.

e. By its own accounting, in 2004 the City of Chicago sustained civilians'
allegations against officers in only 11 of 1,684 allegations of civil rights
violations, less than 1 percent. A far smaller percentage of officers were
actually disciplined for their misconduct. The Department's annual
reports from 2001, 2002 and 2003 reveal similarly high numbers of civil
rights complaints against its officers and similarly low rates of sustaining
those complaints.

f. Currently, the City is fighting tooth and nail to keep quiet the list of names
of the most frequent offenders. *See Bond v. Uteras*, (N.D. IL, 04 cv
2617), (on appeal regarding discovery issue in 07-2651 (7th Cir. 2007)).
Recently the City justified keeping the list of the most frequent abusers
secret not only from the public, but also from the City's legislators
because it was inappropriate to "kick police officers while they are down."

40. Although the City of Chicago has long been aware that its supervision,
training and discipline of police officers is entirely inadequate, it has not
enacted substantial measures to address these failures, and instead has utilized
a strategy using the press to attack those that would complain of patterns of
abuse. Despite their knowledge of the inadequacy of the City's supervision,
training, and discipline of Chicago Police officers, Defendants Internal Affairs
Division, Office of Professional Standards, City of Chicago and the Chicago
Police Department have failed to reform the broken system in any meaningful
way. Redress that was specifically promised by the City Council and the
Superintendent has long gone unfulfilled.

41.    The City has failed to institute an "early warning" system to identify and track patterns of abuse by individual officers or groups of officers. For instance, the City fails to consider prior complaints against officers to identify and respond to patterns of misconduct by its officers.

42.    As a result of the City's policies, practices, and customs, its officers are emboldened to commit misconduct against civilians by virtue of their knowledge that they are effectively "above the law" and will not be held accountable for their misconduct.

43.    The City not only failed to prevent Defendant Officer Haleas from abusing civilians, but actually caused his conduct—not only by the above stated *de facto* policies, but also by continuing to reward what was clearly and noticeably suspicious conduct in an unusually large number of arrests, mostly apparently of Latinos. Knowing of the City's policies and practices, which allowed even the most repetitive abusers to go unmonitored and unpunished, the Defendant Officer had nothing to fear from the City when they abused the Plaintiffs in this instant complaint.

44.    The then chairman of the Chicago City Council's Committee on Police and Fire declared in a January 2000 resolution, "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

45.    As recently as the City Council Budget Committee hearings in October of 2007, Interim Superintendent Dana Starks acknowledged that there were

ineffective controls in place to ensure that the police misconduct (such as that of Defendant Officer Haleas) does not occur.

### Class Action Allegations

46.     Part of this Complaint includes a class action count pursuant to Rule 23 of the Federal Rules of Civil Procedure, brought on behalf of Plaintiff Martinez and all Illinois residents that were falsely arrested and falsely charged by Defendant Officer Haleas as a result of the City of Chicago's *de facto* policies that encourage false arrests and due process violations. Excluded from the class are: Defendants; any individual arrested by Defendant Officer Haleas who at any time had any supervisory or policy-making role with the City of Chicago, the Chicago Police Department, the Office of Professional Standards, or the Internal Affairs Division. Claims for personal injury or consequential damages—as it relates to the Count VII Class claim—are excluded from this class action. The class period for this action is two years.

47.     Plaintiff Martinez meets the prerequisites to bring this action on behalf of the Class because:

a. Numerosity: The class consists of several hundred individuals and is so numerous that joinder of all members as individual plaintiffs is impracticable. The exact number of Class members is unknown, and can only be ascertained via discovery. That said, based on news reports, it appears that the class will consist of at least 700 people who were falsely arrested and charged even after the City of Chicago became aware of Defendant Officer Haleas' conduct.

b.  Commonality: There are questions of law and fact common to the Class.
The Class Allegation is only against the City of Chicago, based on its *de
facto* policies that caused the conduct of Defendant Officer Haleas, and
not against Defendant Officer Haleas.  Therefore only the factual and legal
issues regarding the City's conduct are relevant.  These issues include:

    i.  Whether the city failed to properly investigate allegations of police
misconduct.

    ii.  Whether the city failed to have a system which monitors patterns
of alleged police misconduct.

    iii.  Whether the City failed to properly discipline sustained allegations
of police misconduct.

    iv.  Whether the City failed to properly maintain records of police
misconduct and allegations of police misconduct.

    v.  Whether the City failed to properly hire, train, monitor, and/or
supervise officers.

    vi.  Whether the City has a *de facto* policy, practice, and custom of the
police code of silence which results in police officers refusing to
report instances of police misconduct of which they are aware.

    vii.  Whether the City departments charged with investigating police
misconduct fail to properly investigate misconduct unless prodded
to do so by outside pressures such as threats of exposure.

  viii. Whether all of these de facto policies led to members of the Class being unlawfully arrested and unlawfully charged.

 c. Typicality: Plaintiff's claims are typical of the claims of the Class because Plaintiff and members of the Class each sustained similar damages arising out of Defendants' wrongful conduct.

 d. Adequacy: Plaintiff Martinez will fairly and adequately protect the interests of the class. Plaintiff has no interests that are antagonistic to, or in conflict with, the interests of the Class as a whole, and has engaged competent counsel. Plaintiff is in the process of engaging a highly experienced class action attorney that is very familiar with complex litigation.

48. A class action is superior to all other available methods for this controversy because:

 a. The prosecution of separate actions by the members of the Class would create a risk of inconsistent adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. This is particularly true in this particular class—which appears to consist almost entirely of low-income Latinos with little or limited education, and little or limited English language proficiency. Because of this characteristic of the Class, it is unlikely that many members of the Class will even be aware that they have rights to enforce without a mechanism to inform them;

b.  The prosecution of separate actions by members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for Defendants. Again, in this particular case, such a result is very likely. For decades, City policy makers have given lip-service and created window dressing in an attempt to rectify their de facto policies that result in police misconduct. Allowing various judicial voices to add to this confused (and politically-driven) mish-mash will not serve the interest of the putative Plaintiffs, of Defendants, or of the judicial system. Put simply, the whole issue needs to be litigated in one setting, once and for all;

c.  Defendant City of Chicago acted or refused to act on grounds generally applicable to the Class; and

d.  Questions of law and fact common to members of the class predominate over any questions affection only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I---Unlawful Seizure (individually, on behalf of Plaintiff)

49.  Plaintiff realleges and reincorporates all previous paragraphs.

50.  As described above, the Defendant Officer, acting under color of law, conducted an unconstitutional seizure of Plaintiff Martinez by initially stopping Plaintiff without a lawful basis, without justification and without

probable cause thus violating plaintiff's rights under the Fourth Amendment to the United States Constitution, and 42 U.S.C. Section 1983.

51. More specifically, Defendant Officer Haleas stopped, searched and arrested Plaintiff without probable cause, a warrant for his arrest, reasonable suspicion, or any true belief or indicia that he had committed any crime, and transported him to the police station.

52. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights and innocence of Plaintiff.

53. The misconduct described in this Count was caused and participated in by Defendants supervisors in the manner described more fully above.

WHEREFORE, as a result of Defendant Officer's unconstitutional search and seizure, the City's policy and practice, and the Supervisory Defendants' actions and omissions, Plaintiff suffered economic and emotional damages, including mental and emotional damage and trauma, humiliation, damage to his personal and professional reputation, loss of liberty, mental distress and anguish, he requests actual and compensatory damages in an amount deemed at time of trial to be just, fair, and appropriate.

## COUNT II—Second Unlawful Seizure (individually, on behalf of Plaintiff)

54. Plaintiffs realleges and reincorporates all previous paragraphs.

55. As described above, Defendant Officer falsely arrested and detained Plaintiff without justification and without probable cause thus violating plaintiff's rights under the Fourth Amendment to the United States Constitution, and 42 U.S.C. Section 1983.

56.    Defendant Haleas followed up the initial unlawful seizure with a second unlawful seizure by officially arresting Plaintiff and placing him into lock-up until a bond was created and posted.

57.    As a result of Defendant Officer's false arrest and unlawful detention, the City's policy and practice, and the Supervisory Defendants' actions and omissions, Plaintiff suffered emotional injuries including mental and emotional damage and trauma, humiliation, damage to his personal and professional reputation, loss of liberty, mental distress and anguish.

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against the Individual Defendants and that he be awarded compensatory and punitive damages, reasonable attorney's fees, costs and expenses and such further relief that this Honorable Court deems just.

### COUNT III—False Imprisonment (individually, on behalf of Plaintiff)

58.    Plaintiffs realleges and reincorporates all previous paragraphs.

59.    As described above, Defendant Officer falsely imprisoned Plaintiff without lawful justification, both during the initial stop of Plaintiff, during the transporting of Plaintiff to the police station, and then again when putting Plaintiff in lock-up at the police station.

60.    Plaintiff was physically restrained without a lawful basis by Defendant Officer Haleas, in violation of the common law prohibition against false imprisonment in the State of Illinois.

61.    As a result of this false imprisonment, Plaintiff suffered emotional injuries including mental and emotional damage and trauma, humiliation, damage to

his personal and professional reputation, loss of liberty, mental distress and anguish.

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendant Officer Haleas and that he be awarded compensatory and punitive damages, reasonable attorney's fees, costs and expenses and such further relief that this Honorable Court deems just.

## Count IV—42 U.S.C. sec. 1983, Due Process Claim (individually, on behalf of Plaintiff)

62.   Plaintiff realleges and incorporates by reference the foregoing paragraphs set forth in full herein.

63.   Defendant Officer Haleas' conduct violated plaintiff's right to due process pursuant to the United States Constitution.

64.   Defendant Officer Haleas wrote false police reports and false complaints and to misinform prosecutors of the basis for charges against Plaintiff.  In so doing, Haleas withheld exculpatory evidence and instituted criminal proceedings against Plaintiff without a lawful basis, in violation of Plaintiff's due process rights.

65.   As a result of the ongoing false statements, Plaintiff was forced to attend court dates, and be under the constrictions that coincide with the pretrial conditions of bond.

66.   As a result of Defendant Officer Haleas' violation of Plaintiff's constitutional right to due process, the City's policy and practice, and the Supervisory Defendants' actions and omissions, Plaintiff suffered emotional injuries

including mental and emotional damage and trauma, humiliation, lost wages damage to his personal and professional reputation, loss of liberty, mental distress and anguish.

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against the individual Defendants and that he be awarded compensatory and punitive damages, reasonable attorney's fees, costs, and expenses and such further relief as this Court deems just.

## COUNT V—State Claim Malicious Prosecution (individually, on behalf of Plaintiff)

67. Plaintiff incorporates and realleges all previous paragraphs.

68. Defendant Officer Haleas knowingly and maliciously caused criminal charges to be filed and prosecuted against Plaintiff.

69. There was no probable cause for the institution of a criminal charge against Plaintiff.

70. The criminal proceedings were commenced and continued maliciously.

71. The Defendant Officer Haleas facilitated this malicious prosecution by creating false police reports, which he knew to be false.

72. Defendant Officer Haleas swore out false criminal complaints, which he knew to be false, which resulted in charges being brought against Plaintiff.

73. Plaintiff Martinez continues to suffer injury, as the charges are currently pending, and are expected to be dismissed *nolle prosequi* by the State on his next court date.

74.    Plaintiff was injured, including emotional and physical damage, lost wages, loss of livelihood, legal fees, traumas, humiliation, loss of liberty, mental distress and anguish.

WHEREFORE, Plaintiff respectfully request that judgment be entered in his favor, awarding damages, legal costs, including attorney's fees, and other such relief as the Court deems just and appropriate.

## COUNT VI—42 U.S.C. Section 1983 *Monell* Claim (On behalf of Plaintiff, individually, and on behalf of all members of the Class as against the City of Chicago)

75.    Plaintiffs reallege and incorporate all of the allegations in the preceding paragraphs.

76.    The actions of Defendant Officer Haleas as alleged above were done pursuant to one or more *de facto* policies, practices and/or customs of the City of Chicago, Chicago Police Department, the CPD's Office of Professional Standards, and the CPD's Internal Affairs Division.

77.    Among the *de facto* policies of the municipality and its agents were:

   a.   The failure to properly investigation allegations of police misconduct.

   b.   The failure to have a system which monitors patterns of alleged police misconduct.

   c.   The failure to properly discipline sustained allegations of police misconduct.

   d.   The failure to properly maintain records of police misconduct and allegations of police misconduct.

e.  The failure to properly hire, train, monitor, and/or supervise officers.

f.  A *de facto* policy, practice, and custom of the police code of silence results in police officers refusing to report instances of police misconduct of which they are aware. This conduct included police officers who remain silent or give false or misleading information during official investigations in order to protect themselves or fellow officers from internal discipline or retaliation, civil liability, or criminal prosecution.

78.  The aforementioned policies, practices, and customs, individually and collectively have been maintained and/or implemented with deliberate indifference by the Defendant City of Chicago, Defendant's Police Superintendent Cline, Defendant's Office of Professional Standards Administrator Tisa Morris, and Defendant's Head of Internal Affairs Division Debra Kirby, and have encouraged the individual Defendant Officer Haleas to commit the aforesaid wrongful acts against plaintiffs, and therefore acted as a direct and proximate cause of the complained of Constitutional and other legal violations, and Plaintiff's injuries.

WHEREFORE, Plaintiffs request that judgment be entered in favor of Plaintiffs and against Defendant City of Chicago, and that the Plaintiffs be awarded compensatory damages, reasonable attorney's fees, costs, expenses and any other relief that this Honorable Court finds appropriate and just.

## Count VII—State Claim Respondent Superior

79.  Plaintiffs reallege and incorporate all of the allegations in the preceding paragraphs.

80.    In committing the acts alleged, Defendant Officer Haleas was a members and agent of the Chicago Police Department, acting at all relevant times within the scope of his employment.

81.    Defendant City of Chicago is the employer of the Defendant Officer Haleas.

82.    In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 735 ILCS 10/9-102.

83.    As a proximate cause of Defendant's unlawful acts, which occurred within the scope of his employment activities, Plaintiff suffered physical and emotional injuries.

WHEREFORE, Plaintiffs demand judgment against Defendants City of Chicago for substantial compensatory damages, plus costs and attorneys' fees and whatever additional relief this Court finds equitable and just.

## Global Prayer for Relief

WHEREFORE, Plaintiff prays that this Court:

a.  Order Defendant Haleas to pay an appropriate amount of damages for his conduct in Counts I through V;

b.  Certify this Action, as expressed in Count VI, as a class action under Rule 23;

c.  Order all Defendants to pay Plaintiff and members of the Class an amount of actual damages to be determined at trial, pursuant to Count VI;

d.  Issue an injunction ordering the City of Chicago, its policy makers, and the Chicago City Council to create and implement new policies (to be further defined

and refined following discovery) that require quicker and more effective internal investigation, quicker and more effective discipline, and better and more effective training of all officers;

e.  Issue an order granting Plaintiff reasonable costs and attorney's fees; and

f.  Grant any other relief this Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully Submitted,

Brendan Shiller

CIVIL RIGHTS CENTER
Law Office of Brendan Shiller, LLC
36 S. Wabash, Suite 1310
Chicago, IL 60603
312-332-6462
ARDC: 6279789

Jon Erickson

CIVIL RIGHTS CENTER
Erickson & Oppenheimer
1051 W. Belmont
Chicago, IL 60657
773-875-4646
ARDC: 6205277