**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NOE MARTINEZ, individually, and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>Chicago Police Officer JOHN HALEAS (STAR #6719) and the CITY OF CHICAGO, )<br><br>Defendants. ) | Case No.: 07 C 6112<br><br>Judge Robert W. Gettleman<br><br>Magistrate Judge Jeffrey Cole |

**DEFENDANT CITY OF CHICAGO'S ANSWER TO
PLAINTIFF'S COMPLAINT**

Defendant, City of Chicago ("City"), by its attorney, Terrence M. Burns of Dykema

Gossett PLLC, for its answer to plaintiff's complaint, states:

**NATURE OF THE ACTION**

1.      Plaintiff, NOE MARTINEZ, brings this action both in an individual capacity against Defendant Officer Haleas and as a class action against Defendant City of Chicago on his own behalf and on the behalf of all other similarly situated persons who were arrested for Driving Under the Influence pursuant to 625 ILCS 5/11-501, et seq., by Chicago Police Officer John Haleas, Star #6719.  The class period for this action is two years.  Plaintiff's knowledge is based upon his own acts and Plaintiff's information and belief is based upon the investigation conducted by and through his counsel.

**ANSWER:**    Defendant City admits plaintiff's complaint purports to assert claims against

Defendant Officer Haleas in his individual capacity.  Defendant City admits Officer Haleas was

assigned Star #6719 on June 7, 2007.  Defendant City admits plaintiff's complaint purports to

include class action allegations against the City.  Defendant City denies a class action is

appropriate under the circumstances alleged, and further denies any liability to plaintiff for any

of the claims asserted in the complaint.  As to the allegations in paragraph 1 concerning

plaintiff's "knowledge" and "information and belief," Defendant City lacks knowledge or

information sufficient to form a belief as to the truth or falsity of those allegations.

2.      This is a civil action brought pursuant to 42 U.S.C. §1983 to redress deprivation under color of law of Plaintiff Martinez's rights, as well as the rights of those similarly situated, as secured by the Constitution of the United States of America.

**ANSWER:**   Defendant City admits plaintiff's complaint invokes 42 U.S.C. §1983 and the

United States Constitution.   Defendant City denies liability to plaintiff for any of the claims

asserted in the complaint.

3.      As a result of police misconduct and abuse more fully described below, Plaintiff Martinez and those similarly situated, allege that Defendant Officer Haleas, acting under the color of law unlawfully seized and falsely imprisoned Plaintiff Martinez, wrote false police reports and complaints to misinform prosecutors of the basis for charges, withheld exculpatory evidence and instituted criminal proceedings without a lawful basis, in violation of Plaintiff's due process and other rights.

**ANSWER:**   Defendant City admits plaintiff's complaint purports to allege certain misconduct

against Defendant Officer Haleas.   Defendant City denies liability to plaintiff for any of the

claims asserted in the complaint.

## JURISDICTION AND VENUE

4.      This jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983, the Judicial Code, 28 U.S.C. §1331 and 1343(a); the Constitution of the United States; and pendant jurisdiction as provided under U.S.C. §1367(a) for attendant claims and parties.

**ANSWER:**   Defendant City admits plaintiff's complaint includes claims that invoke the

jurisdiction of this Court.   Defendant City denies liability to plaintiff for any of the claims

asserted in the complaint.

5.      Venue is properly laid in this district because Plaintiff and those similarly situated were arrested by Defendant in Cook County, Chicago, Illinois.

**ANSWER:**   Defendant City admits venue is proper for plaintiff's claims in the United States

District Court, Northern District of Illinois.   Defendant City denies liability to plaintiff for any of

the claims asserted in the complaint.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of any remaining allegations contained in paragraph 5.

## THE PARTIES

6.     Plaintiff Noe Martinez at all relevant times resided in the state of Illinois.

**ANSWER:**     Based on information contained in Chicago Police Department reports, Defendant City admits that on June 7, 2007, plaintiff gave a home address in Chicago, Illinois.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of any information provided by plaintiff.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of any remaining allegations contained in paragraph 6.

7.     Defendant Chicago Police Officer John Haleas is an employee of the Chicago Police Department and acted under his authority as a duly appointed police officer in the Chicago Police Department at all relevant times.

**ANSWER:**     Defendant City admits that on June 7, 2007, Defendant Officer Haleas was employed by the Chicago Police Department, and that he would have been acting under his authority as a police officer in the performance of the duties of his office.  Defendant City denies any remaining allegations contained in paragraph 7 inconsistent with the foregoing.

8.     Defendant City of Chicago is a municipal corporation organized under the laws of the State of Illinois.  It is responsible for the policies, procedures and practices implemented through its various agencies, agents, departments, and employees, and for injury occasioned thereby.  It was the employer of Defendant Officer Haleas at the time of the incidents complained of.

**ANSWER:**     Defendant City admits it is a municipal corporation duly incorporated under the laws of the State of Illinois.  Defendant City states that the allegations in paragraph 8 as to what it is "responsible for" consist of conclusions of law so vague that Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of those allegations.

To the extent that "responsible for" as alleged in this paragraph means "may be held liable in damages for" policies, practices or customs of the Chicago Police Department, Defendant City admits that under certain circumstances, a municipality may be held liable in damages directly caused by its policies, practices, and customs pursuant to *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) and its progeny. Defendant City further states that, because plaintiff does not identify the alleged "policies, procedures and practices" referred to in paragraph 8, Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of those allegations. To the extent plaintiff refers to the "policies, procedures and practices" alleged elsewhere in the complaint, Defendant City denies those allegations. Defendant City admits Defendant Officer Haleas was an employee of the Chicago Police Department on June 6, 2007. Defendant City denies any remaining allegations contained in paragraph 8.

## BACKGROUND

9.      On June 7, 2007, Plaintiff Noe Martinez exited a lounge in Chicago, Illinois.

**ANSWER:**     Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 9.

10.     Plaintiff Martinez walked to his car at 2010 N. Parkside to use his cell phone which he had left in the car.

**ANSWER:**     Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 10.

11.     Plaintiff Martinez removed his car keys from his pants pocket, opened the car door, returned his keys to his pants pocket, and then entered the car.

**ANSWER:**     Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 11.

12.     At no time while in the car, did Plaintiff Martinez remove the keys from his pocket, put the keys or any key in the ignition, or by any means start the car.

**ANSWER:**     Based on police department reports, Defendant City denies the allegations contained in paragraph 12.

13.     At this time Defendant Officer Haleas and another officer approached Plaintiff's car and Defendant Officer Haleas immediately ordered Plaintiff to exit the car.

**ANSWER:**     Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 13.

14.     Plaintiff Martinez complied with the Officer's order and without assistance or difficulty exited the car.

**ANSWER:**     Based on police department reports, Defendant City denies the allegations contained in paragraph 14.  According to those reports, plaintiff "had great difficulty walking and standing."

15.     Immediately upon exiting the car, Plaintiff Martinez was placed under arrest, handcuffed and placed in Defendant Officer Haleas' squad car.

**ANSWER:**     Based on police department reports, Defendant City denies the allegations contained in paragraph 15.  Defendant City admits plaintiff was placed under arrest by Defendant Haleas on June 7, 2007.

16.     At no time did Defendant Officer Haleas offer or administer any Standardized Field Sobriety Performance Tests.

**ANSWER:**     Based on police departments reports, Defendant City denies the allegation that Officer Haleas did not "offer" standardized field sobriety tests to plaintiff.  Based on those reports, Defendant City admits that certain standardized field sobriety tests were not administered because plaintiff refused those tests.  Defendant City denies any remaining allegations contained in paragraph 16.

17.     Defendant Officer Haleas then transported Plaintiff Martinez to the twenty-fifth (25th) Chicago Police District Station.

**ANSWER:**    Based on police department reports, Defendant City admits plaintiff was transported to the 25th District Chicago Police station following his arrest by Officer Haleas. Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 17.

18.    Defendant Officer Haleas then administered the *breathalyzer test* and the result was "insufficient breath" (Which provides no result regarding blood alcohol content).

**ANSWER:**    Based on police department reports, Defendant City admits upon information and belief Officer Haleas attempted to administer a breath test to plaintiff on June 7, 2007, and that the test could not be completed due to "insufficient breath."    Defendant City denies any remaining allegations contained in paragraph 18.

19.    Defendant Officer Haleas kept Martinez for approximately forty minutes and then returned Martinez's keys and released him from custody.

**ANSWER:**    Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 19.

20.    Defendant Officer Haleas charged Martinez with 625 ILCS 5/11-501(a)(2), Driving Under the Influence of Alcohol.

**ANSWER:**    Based on police department reports, Defendant City admits plaintiff was charged with driving under the influence of alcohol (625 ILCS 5/11-501(a)(2)) and another offense.

21.    As a result of this arrest, Plaintiff Martinez's vehicle was impounded, and he had to pay approximately $1700.00 in order for it to be released.

**ANSWER:**    Based on police department reports, Defendant City admits plaintiff's vehicle was impounded following his arrest on June 7, 2007.    Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 21.

22.    As a result of this arrest, Defendant Officer Haleas completed and signed under oath several reports containing perjured information; including Arrest Report, Law Enforcement

Sworn Report, Warning to Motorists, Notice of Vehicle Impoundment and Alcohol/Drug Influence Report, as well as charging documents referred to as Uniform Traffic Citations.

**ANSWER:**     Defendant City admits Officer Haleas completed and signed various documents relating to the arrest of plaintiff on June 7, 2007, including an arrest report, law enforcement sworn report, warning to motorists, alcohol/drug influence report, and traffic citations. Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 22.

23.     Defendant Officer Haleas alleged in those reports that he saw the Plaintiff Martinez driving the car, administered the Standardized Field Performance Tests and that Plaintiff refused to take the *breathalyzer test.*

**ANSWER:**     Defendant City admits police department reports completed by Defendant Officer Haleas indicate he observed plaintiff driving a vehicle on June 7, 2007, plaintiff refused standardized field sobriety tests, and plaintiff refused a breath test that Officer Haleas attempted to administer (insufficient breath).   Defendant City denies any remaining allegations in paragraph 23 inconsistent with the foregoing.

### Culpability of City of Chicago

24.     The Cook County States Attorney first learned that Defendant Officer Haleas ignored prescribed procedures and arrested suspects without probable cause on April 9, 2005, when employees of the Cook County State's Attorney observed personally an unlawful arrest of a citizen.   Two days later, supervisors within the Cook County State's Attorneys' Traffic Division were informed of the misconduct.

**ANSWER:**     Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 24.

25.     On May 17, 2005, Cook County State's Attorneys' employees and agents became aware that in addition to falsely arresting DUI suspects, Haleas swore out false complaints and false police reports in support of the false arrests, leading to unwarranted prosecutions.

**ANSWER:**     Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 25.

26.    On or about May 17, 2005, the City of Chicago's Police Department's Internal Affairs Division was informed of Haleas' misconduct. For more than two years, no action was taken.

**ANSWER:**    Defendant City admits that on or about May 17, 2005, the Chicago Police

Department received allegations of misconduct involving Defendant Officer Haleas and initiated

an investigation. Defendant City denies those allegations of misconduct involved plaintiff or

plaintiff's June 7, 2007 arrest. Defendant City denies the remaining allegations contained in

paragraph 26.

27.    With this information that Defendant Officer Haleas falsely arrested individuals and swore out false police reports in support of those false arrests, the Chicago Police Department kept Defendant Officer Haleas on the street, allowing him to continue to make false arrests for nearly two years. In addition, the Cook County State's Attorneys' Traffic Division, which first uncovered Defendant Officer Haleas' wrongful conduct, continued to prosecute false DUI complaints sworn by him for two years.

**ANSWER:**    Defendant City is without knowledge or information sufficient to form a belief as

to the truth or falsity of the allegations contained in paragraph 27 concerning the Cook County

State's Attorney's Office. Defendant City denies the remaining allegations contained in

paragraph 27.

28.    To this day, despite an ongoing State's Attorney Office investigation into possible felony charges of filing false reports, official misconduct and perjury, and despite a finding by the CPD's Internal Affairs Division that Defendant Officer Haleas did in fact falsely arrest citizens and then perjure himself on sworn complaints, Defendant Officer Haleas remains on active duty. Defendant Officer Haleas was finally removed from his fertile false-DUI beat on October 11, 2007.

**ANSWER:**    Defendant City admits Defendant Officer Haleas was indicted by a grand jury of

the Circuit Court of Cook County, Illinois, in April 2008. Defendant City admits that, following

an investigation by the Internal Affairs Division, the Chicago Police Department made a

sustained finding in CR #305652 against Officer Haleas for violation of a departmental rule

based on his alleged failure to perform a standardized field sobriety test on a motorist as part of a

2005 DUI investigation. Defendant City admits upon information and belief Officer Haleas has

8

been removed from duty as a patrol officer.  Defendant City denies any remaining allegations

contained in paragraph 28 inconsistent with the foregoing.

29.    In 2006, Defendant Officer Haleas made 341 DUI arrests.  Almost all of the arrests were of Latino men, many of whom could not speak English, and for various reasons, including income, immigration status, and language barriers, were more vulnerable to false arrest and malicious prosecution than the average citizen.

**ANSWER:**    Defendant City currently lacks knowledge or information sufficient to form a

belief as to the truth or falsity of the allegations contained in paragraph 29.

30.    In the last seven months of 2005, Defendant Officer Haleas made an estimated 200 DUI arrests.  In the first eight months of 2007, Defendant Officer Haleas made an additional estimated 200 DUI arrests.

**ANSWER:**    Defendant City currently lacks knowledge or information sufficient to form a

belief as to the truth or falsity of the allegations contained in paragraph 30.

31.    During this time, Defendant Officer Haleas continued to receive awards as "Top Cop" for piling up the unlawful DUI arrests.

**ANSWER:**    Defendant City admits upon information and belief Officer Haleas received a

"Top Cop" honor from the Alliance Against Intoxicated Motorists.  Defendant City lacks

knowledge or information sufficient to form a belief as to the truth or falsity of any remaining

allegations contained in paragraph 31.

32.    On information and belief, even prior to the April 9, 2005 discovery, and during the subsequent 30 months, dozens, and maybe hundreds, of DUI suspects testified under oath that Defendant Officer Haleas ignored procedures and files false reports.

**ANSWER:**    Defendant City lacks knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations contained in paragraph 32.

33.    Despite the constant drumbeat of complaints from Defendant Officer Haleas' victims, and the corroboration from two Assistant State's Attorneys that witnessed the misconduct, Defendant Officer Haleas was allowed by the City of Chicago and its departments to continue falsely arresting suspects and to continue to perjure himself for more than 30 months.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 33.

34.     Further, ignoring their own employees, Cook County States Attorney Traffic Division supervisors continued to prosecute Defendant Officer Haleas cases for more than 30 months.

**ANSWER:**    Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 34.

35.     According to a spokesman for the Cook County States Attorney, it appears that the Chicago Police Department would have never taken action against Defendant Officer Haleas if not for the constant prodding by the States Attorney.

**ANSWER:**    Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 35.

36.     On information and belief, the eventual suspension of Defendant Officer Haleas, and dropping of his cases, only occurred after the Police Department and the Cook County States Attorney learned that the issues regarding Defendant Officer Haleas' misconduct might become public.

**ANSWER:**    Defendant City makes no response to the allegations contained in paragraph 36 to the extent directed to the knowledge and/or actions of the Cook County State's Attorney. Defendant City admits Officer Haleas received a suspension as a result of a sustained finding in CR#305652 following an investigation completed by the Chicago Police Department's Internal Affairs Division.  To the extent any remaining allegations in paragraph 36 are directed against the City, those allegations are denied.

37.     Such unwillingness to investigate police officers and on-duty misconduct by police officers has been a *de facto* policy of the City of Chicago, Chicago Police Department, Office of Professional Standards and Internal Affairs Division for years.  And, their conduct in the instant case mirrors their conduct in various similar cases of police misconduct.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 37.

38.     The City's inaction regarding Defendant Officer Haleas' repeated conduct is just one example of the City's widespread failure to properly control its officers.  The City of Chicago maintains a *de facto* policy, practice and custom of failing to train, supervise, discipline, and control its police officers.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 38.

39.     Municipal policy-makers have long been aware of the City's policy, practice and custom of failing to properly train, supervise and discipline its police officers:

**ANSWER:**     Defendant City denies it maintains a policy, practice, or custom of failing to properly train, supervise, and discipline its police officers.  To the extent a further response is required, Defendant City states as follows:

      a.      In 1999, the then Superintendent of Police gave a speech highlighting problems with the City of Chicago's policies and practices. Superintendent Hilliard spoke specifically of the need for early detection of potential problem officers, an effective disciplinary system, and officer accountability for misconduct.

**ANSWER:**     (a)  Defendant City denies it maintains a policy, practice, or custom of failing to properly train, supervise, and discipline its police officers.  Defendant City admits Terry Hillard served as Superintendent of Police for the Chicago Police Department in 1999.  The remaining allegations of paragraph 39(a) are vague and incomplete.  Defendant City therefore lacks knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations.

      b.      In 2001, the Justice Coalition of Greater Chicago ("JCGC"), composed of more than a hundred community groups, concluded a study that the [sic] determined that the Chicago Police Department lacked many of the basic tools necessary to identify, monitor, punish and prevent police misconduct and brutality.  The JCGC findings were presented to Mayor Richard Daley, the police superintendent, and the Chicago Police Board.

**ANSWER:**     (b)  Defendant City denies it maintains a policy, practice, or custom of failing to properly train, supervise, and discipline its police officers.  The City states that plaintiff's allegations in paragraph 39(b) regarding the Justice Coalition of Greater Chicago and its "findings" are vague and incomplete.  Defendant City therefore lacks knowledge or information sufficient to form a belief as to the truth or falsity of those allegations.

      c.      In the 2002 arbitration for the police contract with the Fraternal Order of Police, the City recognized that it needed a way to identify officers who engage in repeated misconduct, stating that "the current system is flawed

> because 'not sustained' complaints cannot be considered in new investigations, even if they might suggest a pattern of inappropriate conduct."

**ANSWER:**     (c)  Defendant City denies it maintains a policy, practice, or custom of failing to properly train, supervise, and discipline its police officers.   The remaining allegations of paragraph 39(c), including the unattributed quotation, are vague and incomplete.  Defendant City therefore lacks knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations.

> d.     In 2003, a federal jury in the case of *Garcia v. City of Chicago,* No. 01 C 8945, 2003 WL 22175618, at \*2 (N.D. Ill. Sept. 19, 2003) affirmed that the City's police misconduct investigations were systematically "incomplete, inconsistent, delayed, and slanted in favor of the officers" and as a result, fostered a culture of impunity within the Chicago Police Department.   The "City of Chicago's custom and practice of not adequately investigating, disciplining, or prosecuting off-duty Chicago Police officers who use excessive force against individuals" was found to have directly caused the constitutional harm. *Id*. at \* 1.

**ANSWER:**     (d)  Defendant City denies it maintains a policy, practice, or custom of failing to properly train, supervise, and discipline its police officers.   Defendant City admits Judge Holderman issued a written opinion in *Garcia v. City of Chicago*, 2003 U.S. Dist. LEXIS 16565 (N.D. Ill. Sept. 19, 2003), but denies its relevance or applicability to this matter.  Defendant City states that the reference by Judge Holderman in *Garcia v. City of Chicago* to investigations being incomplete, inconsistent, delayed and slanted in favor of the officers was limited to investigations of "off-duty police officer violence," and therefore is inapplicable to the circumstances alleged in plaintiff's complaint.  Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of any remaining allegations contained in paragraph 39(d).

> e.     By its own accounting, in 2004 the City of Chicago sustained civilians' allegations against officers in only 11 of 1,684 allegations of civil rights violations, less than 1 percent.  A far smaller percentage of officers were

actually disciplined for their misconduct. The Department's annual reports from 2001, 2002 and 2003 reveal similarly high numbers of civil rights complaints against its officers and similarly low rates of sustaining those complaints.

**ANSWER:** (e) Defendant City denies it maintains a policy, practice, or custom of failing to properly train, supervise, and discipline its police officers. Defendant City admits the 2004 annual report indicated there were 1,684 complaints investigated by IAD that were characterized as "civil rights violations," and that a sustained finding was made in 11 of those cases. Defendant City denies this single statistic completely or accurately reflects the sustained rates of all Complaint Registers investigated by IAD and/or OPS in 2004. Defendant City further denies that the percentage of sustained findings by the Chicago Police Department fairly reflects or has any relevance to the merits of the underlying complaints. The allegations in paragraph 39(e) as to "far smaller percentage," "similarly high numbers," and "similarly low rates" are vague and argumentative, and defendant City therefore lacks knowledge or information sufficient to form a belief as to the truth or falsity of those allegations. Defendant City denies any remaining allegations contained in paragraph 39(e).

f.   Currently, the City is fighting tooth and nail to keep quiet the list of names of the most frequent offenders. *See Bond v. Uteras*, (N.D. IL, 04 CV 2617), (on appeal regarding discovery issue in 07-2651 (7th Cir. 2007)). Recently the City justified keeping the list of the most frequent abusers secret not only from the public, but also from the City's legislators because it was inappropriate to "kick police officers while they are down."

**ANSWER:** (f) Defendant City denies it maintains a policy, practice, or custom of failing to properly train, supervise, and discipline its police officers. Defendant City denies that the argumentative allegations in paragraph 39(f) accurately or fairly represent the City's position in *Bond v. Utreras, et al.*, No. 04 C 2617, and it therefore denies those allegations. Defendant City denies any remaining allegations contained in paragraph 39(f).

40.     Although the City of Chicago has long been aware that its supervision, training and discipline of police officers is entirely inadequate, it has not enacted substantial measures to address these failures, and instead has utilized a strategy using the press to attack those that would complain of patterns of abuse.  Despite their knowledge of the inadequacy of the City's supervision, training, and discipline of Chicago Police officers, Defendants Internal Affairs Division, Office Of Professional Standards, City of Chicago and the Chicago Police Department have failed to reform the broken system in any meaningful way.  Redress that was specifically promised by the City Council and the Superintendent has long gone unfulfilled.

**ANSWER:**     Defendant City denies the allegations contained in paragraph 40.

41.     The City has failed to institute an "early warning" system to identify and track patterns of abuse by individual officers or groups of officers.  For instance, the City fails to consider prior complaints against officers to identify and respond to patterns of misconduct by its officers.

**ANSWER:**     Defendant City denies the allegations contained in paragraph 41.

42.     As a result of the City's policies, practices, and customs, its officers are emboldened to commit misconduct against civilians by virtue of their knowledge that they are effectively "above the law" and will not be held accountable for their misconduct.

**ANSWER:**     Defendant City denies the allegations contained in paragraph 42.

43.     The City not only failed to prevent Defendant Officer Haleas from abusing civilians, but actually caused his conduct—not only by the above stated *de facto* policies, but also by continuing to reward what was clearly and noticeably suspicious conduct in an unusually large number of arrests, mostly apparently of Latinos.  Knowing of the City's policies and practices, which allowed even the most repetitive abusers to go unmonitored and unpunished, the Defendant Officer had nothing to fear from the City when they abused the Plaintiffs in this instant complaint.

**ANSWER:**     Defendant City denies the allegations contained in paragraph 43.

44.     The then chairman of the Chicago City Council's Committee on Police and Fire declared in a January 2000 resolution, "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

**ANSWER:**     Defendant City admits in January 2000, Alderman William Beavers, then

Chairman of the Committee on Police and Fire of the Chicago City Council, proposed a

resolution that stated, in part, "[Chicago] police officers who do not carry out their

responsibilities in a professional manner have ample reason to believe that they will not be held

accountable, even in instances of egregious misconduct." Defendant City denies any remaining allegations contained in paragraph 44 inconsistent with the foregoing.

45.     As recently as the City Council Budget Committee hearings in October of 2007, Interim Superintendent Dana Starks acknowledged that there were ineffective controls in place to ensure that the police misconduct (such as that of Defendant Officer Haleas) does not occur.

**ANSWER:**    Defendant City admits former Interim Superintendent Dana Starks testified at City Council Budget Committee hearings in October 2007. The allegations in paragraph 45 as to the substance of that testimony are vague and incomplete. Defendant City therefore lacks knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations.

## Class Action Allegations

46.     Part of this Complaint includes a class action count pursuant to Rule 23 of the Federal Rules of Civil Procedure, brought on behalf of Plaintiff Martinez and all Illinois residents that were falsely arrested and falsely charged by Defendant Officer Haleas as a result of the City of Chicago's *de facto* policies that encourage false arrests and due process violations. Excluded from the class are: Defendants; any individual arrested by Defendant Officer Haleas who at any time had any supervisory or policy-making role with the City of Chicago, the Chicago Police Department, the Office of Professional Standards, or the Internal Affairs Division. Claims for personal injury or consequential damages—as it relates to the Count VII Class claim—are excluded from this class action. The class period for this action is two years.

**ANSWER:**    Defendant City admits plaintiff's complaint purports to include class action allegations against the City invoking FRCP Rule 23. Defendant City denies a class action is appropriate under the circumstances alleged, and further denies any liability to plaintiff for any of the claims asserted in the complaint. Defendant City denies it maintains the "policies" alleged in paragraph 46. Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 46.

47.     Plaintiff Martinez meets the prerequisites to bring this action on behalf of the Class because:

         a.     Numerosity: The class consists of several hundred individuals and is so numerous that joinder of all members as individual plaintiffs is

impracticable.  The exact number of Class members is unknown, and can only be ascertained via discovery.  That said, based on news reports, it appears that the class will consist of at least 700 people who were falsely arrested and charged even after the City of Chicago became aware of Defendant Officer Haleas' conduct.

b.    Commonality: There are questions of law and fact common to the Class. The Class Allegation is only against the City of Chicago, based on its *de facto* policies that caused the conduct of Defendant Officer Haleas, and not against Defendant Officer Haleas.  Therefore only the factual and legal issues regarding the City's conduct are relevant.  These issues include:

   i.    Whether the city failed to properly investigate allegations of police misconduct.

   ii.    Whether the city failed to have a system which monitors patterns of alleged police misconduct.

   iii.    Whether the City failed to properly discipline sustained allegations of police misconduct.

   iv.    Whether the City failed to properly maintain records of police misconduct and allegations of police misconduct.

   v.    Whether the City failed to properly hire, train, monitor, and/or supervise officers.

   vi.    Whether the City has a *de facto* policy, practice, and custom of the police code of silence which results in police officers refusing to report instances of police misconduct of which they are aware.

   vii.    Whether the City departments charged with investigating police misconduct fail to properly investigate misconduct unless prodded to do so by outside pressures such as threats of exposure.

   viii.    Whether all of the *de facto* policies led to members of the Class being unlawfully arrested and unlawfully charged.

c.    Typicality: Plaintiff's claims are typical of the claims of the Class because Plaintiff and members of the Class each sustained similar damages arising out of Defendants' wrongful conduct.

d.    Adequacy: Plaintiff Martinez will fairly and adequately protect the interests of the class.  Plaintiff has no interests that are antagonistic to, or in conflict with, the interests of the Class as a whole, and has engaged competent counsel.  Plaintiff is in the process of engaging a highly experienced class action attorney that is very familiar with complex litigation.

**ANSWER:** Defendant City denies the allegations of paragraph 47, including all subparagraphs therein.

48.     A class action is superior to all other available methods for this controversy because:

a.     The prosecution of separate actions by the members of the Class would create a risk of inconsistent adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. This is particularly true in this particular class—which appears to consist almost entirely of low-income Latinos with little or limited education, and little or limited English language proficiency. Because of this characteristic of the Class, it is unlikely that many members of the Class will even be aware that they have rights to enforce without a mechanism to inform them;

b.     The prosecution of separate actions by members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for Defendants. Again, in this particular case, such a result is very likely. For decades, City policy makers have given lip-service and created window dressing in an attempt to rectify their *de facto* policies that result in police misconduct. Allowing various judicial voices to add to this confused (and politically-driven) mish-mash will not serve the interest of the putative Plaintiffs, of Defendants, or of the judicial system. Put simply, the whole issue needs to be litigated in one setting, once and for all;

c.     Defendant City of Chicago acted or refused to act on grounds generally applicable to the Class; and

d.     Questions of law and fact common to Members of the class predominate over any questions affection only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**ANSWER:** Defendant City denies the allegations of paragraph 48, including all subparagraphs therein.

### COUNT I—Unlawful Seizure (individually, on behalf of Plaintiff)

The City of Chicago is not a party defendant from which plaintiff seeks relief in count I. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in later counts against the City.

49.     Plaintiff realleges and reincorporates all previous paragraphs.

**ANSWER:**     Defendant City adopts and restates its answers and responses to the previous paragraphs of plaintiff's complaint as and for its answer and response to paragraph 49 as though fully set forth herein.

50.     As described above, the Defendant Officer, acting under color of law, conducted an unconstitutional seizure of Plaintiff Martinez by initially stopping Plaintiff without a lawful basis, without justification and without probable cause thus violating plaintiff's rights under the Fourth Amendment to the United States Constitution and 42 U.S.C. Section 1983.

**ANSWER:**     Based on police department reports, Defendant City denies the allegations contained in paragraph 50.

51.     More specifically, Defendant Officer Haleas stopped, searched and arrested Plaintiff without probable cause, a warrant for his arrest, reasonable suspicion, or any true belief or indicia that he had committed any crime, and transported him to the police station.

**ANSWER:**     Based on police department reports, Defendant City denies the allegations contained in paragraph 51.

52.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights and innocence of Plaintiff.

**ANSWER:**     Based on police department reports, Defendant City has denied the allegations of "misconduct described in this Count," and it therefore denies the allegations contained in paragraph 52.

53.     The misconduct described in this Count was caused and participated in by Defendants supervisors in the manner described more fully above.

**ANSWER:**     Defendant City moves to strike as vague and improper any purported claims or allegations against "supervisors" on the basis that (1) plaintiff has not named any supervisory

officials or personnel as defendants in his complaint, and (2) plaintiff has not included allegations of involvement by any supervisors "in the manner described more fully above." In further response, based on police department reports, Defendant City has denied the allegations of "misconduct described in this Count," and it therefore denies the remaining allegations contained in paragraph 53.

### COUNT II—Second Unlawful Seizure (individually, on behalf of Plaintiff)

The City of Chicago is not a party defendant from which plaintiff seeks relief in count II. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in later counts against the City.

54.     Plaintiff realleges and reincorporates all previous paragraphs.

**ANSWER:**     Defendant City adopts and restates its answers and responses to the previous paragraphs of plaintiff's complaint as and for its answer and response to paragraph 54 as though fully set forth herein.

55.     As described above, Defendant Officer falsely arrested and detained Plaintiff without justification and without probable cause thus violating plaintiff's rights under the Fourth Amendment to the United States Constitution, and 42 U.S.C. Section 1983.

**ANSWER:**     Based on police department reports, Defendant City denies the allegations contained in paragraph 55.

56.     Defendant Haleas followed up the initial unlawful seizure with a second unlawful seizure by officially arresting Plaintiff and placing him into lock-up until a bond was created and posted.

**ANSWER:**     Based on police department reports, Defendant City denies the allegations contained in paragraph 56.

57.     As a result of Defendant Officer's false arrest and unlawful detention, the City's policy and practice, and the Supervisory Defendants' actions and omissions, Plaintiff suffered emotional injuries including mental and emotional damage and trauma, humiliation, damage to his personal and professional reputation, loss of liberty, mental distress and anguish.

**ANSWER:**    Defendant City moves to strike as vague and improper any purported claims or allegations based upon or asserted against "supervisory defendants" on the basis that (1) plaintiff has not named any supervisory officials or personnel as defendants in his complaint, and (2) plaintiff has not alleged in the complaint any "actions or omissions" by any supervisory defendants.  In further response, Defendant City has denied the policies and practices alleged in plaintiff's complaint, and it therefore denies the remaining allegations contained in paragraph 57.

### COUNT III—False Imprisonment (individually, on behalf of Plaintiff)

The City of Chicago is not a party defendant from which plaintiff seeks relief in count III. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in later counts against the City.

58.    Plaintiff realleges and reincorporates all previous paragraphs.

**ANSWER:**    Defendant City adopts and restates its answers and responses to the previous paragraphs of plaintiff's complaint as and for its answer and response to paragraph 58 as though fully set forth herein.

59.    As described above, Defendant Officer falsely imprisoned Plaintiff without lawful justification, both during the initial stop of Plaintiff, during the transporting of Plaintiff to the police station, and then again when putting Plaintiff in lock-up at the police station.

**ANSWER:**    Based on police department reports, Defendant City denies the allegations contained in paragraph 59.

60.    Plaintiff was physically restrained without a lawful basis by Defendant Officer Haleas, in violation of the common law prohibition against false imprisonment in the State of Illinois.

**ANSWER:**    Based on police department reports, Defendant City denies the allegations contained in paragraph 60.

61.    As a result of this false imprisonment, Plaintiff suffered emotional injuries including mental and emotional damage and trauma, humiliation, damage to his personal and professional reputation, loss of liberty, mental distress and anguish.

**ANSWER:**    Based on police department reports, Defendant City denies the allegations of misconduct set forth in plaintiff's complaint, and it therefore denies the allegations contained in paragraph 61.

### Count IV-42 U.S.C. Sec. 1983, Due Process Claim (individually, on behalf of Plaintiff)

The City of Chicago is not a party defendant from which plaintiff seeks relief in count IV. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in later counts against the City.

62.    Plaintiff realleges and incorporates by reference the foregoing paragraphs set forth in full herein.

**ANSWER:**    Defendant City adopts and restates its answers and responses to the previous paragraphs of plaintiff's complaint as and for its answer and response to paragraph 62 as though fully set forth herein.

63.    Defendant Officer Haleas' conduct violated plaintiff's right to due process pursuant to the United States Constitution.

**ANSWER:**    Based on police department reports, Defendant City denies the allegations of misconduct asserted in the complaint against Defendant Officer Haleas, and it therefore denies the allegations contained in paragraph 63.

64.    Defendant Officer Haleas wrote false police reports and false complaints and to misinform prosecutors of the basis for charges against Plaintiff. In so doing, Haleas withheld exculpatory evidence and instituted criminal proceedings against Plaintiff without a lawful basis, in violation of Plaintiff's due process rights.

**ANSWER:**    Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 64.

65.    As a result of the ongoing false statements, Plaintiff was forced to attend court dates, and be under the constrictions that coincide with the pretrial conditions of bond.

**ANSWER:**    Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 64.

66.     As a result of Defendant Officer Haleas' violation of Plaintiff's constitutional right to due process, the City's policy and practice, and the Supervisory Defendants' actions and omissions, Plaintiff suffered emotional injuries including mental and emotional damage and trauma, humiliation, lost wages, damage to his personal and professional reputation, loss of liberty, mental distress and anguish.

**ANSWER:**     Defendant City moves to strike as vague and improper any purported claims or allegations based upon or asserted against "supervisory defendants" on the basis that (1) plaintiff has not named any supervisory officials or personnel as defendants in his complaint, and (2) plaintiff has not alleged in the complaint any "actions or omissions" by any supervisory defendants.  In further response, Defendant City has denied the policies and practices alleged in plaintiff's complaint, and it therefore denies the remaining allegations contained in paragraph 66.

### COUNT V-State Claim Malicious Prosecution (individually, on behalf of Plaintiff)

The City of Chicago is not a party defendant from which plaintiff seeks relief in count V. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in later counts against the City.

67.     Plaintiff incorporates and realleges all previous paragraphs.

**ANSWER:**     Defendant City adopts and restates its answers and responses to the previous paragraphs of plaintiff's complaint as and for its answer and response to paragraph 67 as though fully set forth herein.

68.     Defendant Officer Haleas knowingly and maliciously caused criminal charges to be filed and prosecuted against Plaintiff.

**ANSWER:**     Based on police department reports, Defendant City denies the allegations contained in paragraph 68.

69.     There was no probable cause for the institution of a criminal charge against Plaintiff.

**ANSWER:**     Based on police department reports, Defendant City denies the allegations contained in paragraph 69.

70.    The criminal proceedings were commenced and continued maliciously.

**ANSWER:**    Based on police department reports, Defendant City denies the allegations contained in paragraph 70.

71.    The Defendant Officer Haleas facilitated this malicious prosecution by creating false police reports, which he knew to be false.

**ANSWER:**    Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 71.

72.    Defendant Officer Haleas swore out false criminal complaints, which he knew to be false, which resulted in charges being brought against Plaintiff.

**ANSWER:**    Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 72.

73.    Plaintiff Martinez continues to suffer injury, as the charges are currently pending, and are expected to be dismissed *nolle prosequi* by the State on his next court date.

**ANSWER:**    Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 73.

74.    Plaintiff was injured, including emotional and physical damage, lost wages, loss of livelihood, legal fees, traumas, humiliation, loss of liberty, mental distress and anguish.

**ANSWER:**    Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 74.   Defendant City denies any liability to plaintiff for the damages alleged in paragraph 74.

## COUNT VI-42 U.S.C. Section 1983 *Monell* Claim (On behalf of Plaintiff, individually, and on behalf of all members of the Class as against the City of Chicago)

75.    Plaintiffs reallege and incorporate all of the allegations in the preceding paragraphs.

**ANSWER:**    Defendant City adopts and restates its answers and responses to the previous paragraphs of plaintiff's complaint as and for its answer and response to paragraph 75 as though fully set forth herein.

76.     The actions of Defendant Officer Haleas as alleged above were done pursuant to one or more *de facto* policies, practices and/or customs of the City of Chicago, Chicago Police Department, the CPD's Office of Professional Standards, and the CPD's Internal Affairs Division.

**ANSWER:**     Defendant City denies the "policies, practices, and/or customs" alleged in plaintiff's complaint, and it therefore denies the allegations contained in paragraph 76.

77.     Among the *de facto* policies of the municipality and its agents were:

    a.     The failure to properly investigation [sic] allegations of police misconduct.

    b.     The failure to have a system which monitors patterns of alleged police misconduct.

    c.     The failure to properly discipline sustained allegations of police misconduct.

    d.     The failure to properly maintain records of police misconduct and allegations of police misconduct.

    e.     The failure to properly hire, train, monitor, and/or supervise officers.

    f.     A *de facto* policy, practice, and custom of the police code of silence results in police officers refusing to report instances of police misconduct of which they are aware. This conduct included police officers who remain silent or give false or misleading information during official investigations in order to protect themselves or fellow officers from internal discipline or retaliation, civil liability, or criminal prosecution.

**ANSWER:**     Defendant City denies the allegations contained in paragraph 77, including sub-paragraphs (a) through (f), inclusive, and each of them.

78.     The aforementioned policies, practices, and customs, individually and collectively have been maintained and/or implemented with deliberate indifference by the Defendant City of Chicago, Defendant's Police Superintendent Cline, Defendant's Office of Professional Standards Administrator Tisa Morris, and Defendant's Head of Internal Affairs Division Debra Kirby, and have encouraged the individual Defendant Officer Haleas to commit the aforesaid wrongful acts against plaintiffs, and therefore acted as a direct and proximate cause of the complained of Constitutional and other legal violations, and Plaintiff's injuries.

**ANSWER:**     Defendant City denies the allegations contained in paragraph 78.

WHEREFORE, defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and

against plaintiff on count VI, and for its costs and fees, and for such further relief as this Court deems just and proper.

## Count VII—State Claim Respondent [sic] Superior

79.    Plaintiffs reallege and incorporate all of the allegations in the preceding paragraphs.

**ANSWER:**    Defendant City adopts and restates its answers and responses to the previous paragraphs of plaintiff's complaint as and for its answer and response to paragraph 79 as though fully set forth herein.

80.    In committing the acts alleged, Defendant Officer Haleas was a members [sic] and agent of the Chicago Police Department, acting at all relevant times within the scope of his employment.

**ANSWER:**    Based upon police department reports, Defendant City has denied the allegations of misconduct asserted against Defendant Officer Haleas in the complaint, which is the underlying premise of this paragraph, and it therefore denies the allegations contained in paragraph 80.  Defendant City states that on June 7, 2007, Defendant Officer Haleas was employed by the Chicago Police Department, and that he would have been acting under his authority as a police officer in the performance of the duties of his office.

81.    Defendant City of Chicago is the employer of the Defendant Officer Haleas.

**ANSWER:**    Defendant City admits that on June 7, 2007, Defendant Officer Haleas was employed by the Chicago Police Department.

82.    In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities, 735 ILCS 10/9-102.

**ANSWER:**    Defendant City admits the existence of 745 ILCS 10/9-102, but denies any liability to plaintiff pursuant to that statute.  Defendant City further denies the statute is relevant to a state law claim based upon the doctrine of *respondeat superior*.

83.     As a proximate cause of Defendant's unlawful acts, which occurred within the scope of his employment activities, Plaintiff suffered physical and emotional injuries.

**ANSWER:**     Based on police department reports, Defendant City has denies the allegations of "unlawful acts" on the part of Defendant Officer Haleas, which is the underlying premise of this paragraph, and it therefore denies the allegations contained in paragraph 83.

WHEREFORE, defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on count VII, and for its costs and fees, and for such further relief as this Court deems just and proper.

### Global Prayer for Relief

WHEREFORE, Plaintiff prays that this Court:

a.     Order Defendant Haleas to pay an appropriate amount of damages for his conduct in Counts I through V;

b.     Certify this Action, as expressed in Count VI, as a class action under Rule 23;

c.     Order all Defendants to pay Plaintiff and members of the Class an amount of actual damages to be determined at trial, pursuant to Count VI;

d.     Issue an injunction ordering the City of Chicago, its policy makers, and the Chicago City Council to create and implement new policies (to be further defined and refined following discovery) that require quicker and more efficient internal investigation, quicker and more effective discipline, and better and more effective training for all officers;

e.     Issue an order granting Plaintiff reasonable costs and attorney's fees; and

f.     Grant any other relief this Court deems just and proper.

**ANSWER:**     Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court:  (1) deny plaintiff's request to certify this matter as a class action under FRCP Rule 23, (2) deny plaintiff's improper request for issuance of an injunction; (3) reject plaintiff's request for costs and attorney's fees; (4) enter judgment in

favor of the City and against plaintiff on the complaint, and for its costs and fees; and (5) for such further relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES

NOW COMES defendant, City of Chicago, without prejudice to its denials and all other statements in its answer and elsewhere, for its affirmative defenses to plaintiff's complaint, states as follows:

1.      To the extent any individual employees of the City of Chicago or its police department are not liable as alleged in the complaint, the City would not be liable.

2.      Defendant City is not liable for the claims alleged under state law because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct.  745 ILCS 10/2-202.

3.      Under the Illinois Tort Immunity Act, defendants are not liable under state law for any injury caused by the act or omission of another person.  745 ILCS 10/2-204.

4.      Plaintiff's claims in the complaint are barred by the applicable statutes of limitations.

5.      Plaintiff's claims in the complaint are barred by the doctrines of *res judicata* and collateral estoppel.

6.      The City of Chicago is immune from the imposition of punitive damages under both state and federal law.  Moreover, under Illinois law, the City cannot be required to indemnify an employee for punitive damages, nor may it pay a judgment for punitive damages on behalf of an employee.

7.      As to plaintiff's state law claims, Defendant City is not liable to pay attorney fees as "the law in Illinois clearly is that absent a statute or contractual agreement 'attorney fees and

the ordinary expenses and burdens of litigation are not allowable to the successful party.'" *See Kerns v. Engelke*, 76 Ill. 2d 154, 166 (1979).

8.      To the extent any injuries or damages claimed by plaintiff were proximately caused, in whole or in part, by negligent, willful, wanton and/or other wrongful conduct on the part of plaintiff as reflected in the public record, including but not limited to police reports, any verdict or judgment obtained by plaintiff must be reduced by an amount commensurate with the degree of fault attributed to plaintiff by the jury in this case.

9.      To the extent plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by plaintiff must be reduced by application of the principle that a plaintiff has a duty to mitigate his or her damages.

## JURY DEMAND

Defendant City of Chicago respectfully requests a trial by jury.

Dated: July 9, 2008                                      Respectfully submitted,


                                                         s/ Paul A. Michalik
                                                         _____
                                                         One of the Attorneys for Defendant,
Terrence M. Burns                                        CITY OF CHICAGO
Paul A. Michalik
Daniel M. Noland
Gregory L. Lacey
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, Illinois 60606
(312) 876-1700 (telephone)
(312) 876-1155 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 9, 2008, I electronically filed the foregoing **Defendant City of Chicago's Answer to Plaintiff's Complaint** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

Jon F. Erickson
Michael Oppenheimer
Erickson & Oppenheimer, LLC
4554 N. Broadway
Suite 325
Chicago, Illinois  60640
773.907-0940 (telephone)

Daniel F. Gallagher
Lawrence S. Kowalczyk
Dominick L. Lanzito
Querrey & Harrow, Ltd.
175 West Jackson Boulevard
Suite 1600
Chicago, Illinois  60604
312.540.7000 (telephone)
312.540.0578 (facsimile)

James M. Smith
Richard J. Doherty
Bock & Hatch LLC
134 N. LaSalle Street
Suite 1000
Chicago, Illinois  60602
312.658.5500 (telephone)

s/ Paul A. Michalik
Paul A. Michalik

CHICAGO\2458913.1
ID\PAM