IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NOE MARTINEZ, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) | No. 07 C 6112 |
| v. | ) ) | Judge Robert W. Gettleman |
| CHICAGO POLICE OFFICER JOHN HALEAS, (Star # 6719) and THE CITY OF CHICAGO, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Noe Martinez has brought a seven count complaint against Chicago Police Officer John Haleas and the City of Chicago arising out of defendant Haleas' arrest of plaintiff for driving under the influence of alcohol ("DUI"). Counts I through V are brought solely against Haleas alleging two separate claims for unconstitutional seizure, false imprisonment, a violation of plaintiff's Fourteenth Amendment due process rights and a state law claim for malicious prosecution. Counts VI and VII are brought against the City. Count VII is a claim for respondeat superior based on the state law claims alleged against Haleas. Count VI is a claim brought against the City pursuant to Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978), alleging that a policy or practice of the City resulted in Haleas' violation of plaintiff's constitutional rights. Plaintiff purports to bring this claim individually and on behalf of all other similarly situated, and has moved, under Fed. R. Civ. P. 23, for class certification. For the reasons described below that motion is denied.

**BACKGROUND**

Defendant Haleas is a Chicago police officer who, according to the Alliance Against Intoxicated Motorists, was the "Top DUI Cop" in the state of Illinois for the years 2004 through 2006. He had 372 DUI arrests in 2004, 374 arrests in 2005 and 344 arrests in 2006. For those three years he averaged 113 more DUI arrests than the next closest officer in the state.

By 2002, however, dozens or even hundreds of DUI suspects had testified under oath that Haleas had ignored procedures and filed false reports. On April 9, 2005, two Assistant State Attorneys personally observed Haleas' unlawful arrest of a citizen. Two days later supervisors within the Cook County State Attorney's Traffic Division were informed of Haleas' conduct. By May 17, 2005, the State Attorney's Office was aware that in addition to falsely arresting DUI suspects, Haleas was swearing out false complaints and false police reports in support of those false arrests, which was leading to unwarranted prosecutions.

Also by that time the State Attorney's Office had informed the Chicago Police Department's Internal Affairs Division of Haleas' conduct. Nonetheless, Haleas remained on the street and continued to make DUI arrests for an additional two years. The information in the State Attorney's possession that Haleas had a history of making false DUI arrests, falsifying arrest reports and complaints, was not turned over in discovery in the DUI prosecutions.

Haleas was finally removed from his DUI beat on October 11, 2007. He was indicted for official misconduct on April 9, 2008. In 2008 the State Attorney's Office <u>nolle</u> <u>prosequi'd</u>, or dismissed, 167 pending DUI cases initiated by an Haleas arrest from December 7, 2006 to December 7, 2007.

Plaintiff was arrested by Haleas on June 7, 2007. According to plaintiff he had exited a lounge and walked to his car to retrieve his cellphone. He unlocked his car, opened the door, placed the keys back in his pocket and then entered the car. He never started the car. Haleas then approached, ordered plaintiff out of the car and placed plaintiff under arrest. No Standardized Field Sobriety Test was administered. Haleas took plaintiff to the 25th District Police Station and administered a Breathalyzer test. The results was "insufficient breath." Haleas kept plaintiff for approximately 40 minutes, charged him with DUI, and then released him from custody. Plaintiff's car was impounded, requiring him to pay approximately $1,700 for its release. Haleas completed and signed several reports containing perjured information. In those reports Haleas swore he saw plaintiff driving the car, administered the Standardized Field Sobriety Test and that plaintiff refused to take a Breathalyzer test.

In the instant case, plaintiff alleges "that each and every DUI arrest Haleas made after May 17, 2005 violated two of the arrestees' constitutional rights to due process," resulting in damages including court costs, vehicle impoundment costs and attorney's fees. According to plaintiff, those constitutional violations "were only made possible by the City's municipal policies and/or customs that created a deliberate indifference to the constitutional rights of the class members."

## DISCUSSION

Plaintiff seeks certification of two classes under Count VI. Class A, which plaintiff describes as a substantive due process claim, is defined as:

> all people who were arrested for driving under the influence by defendant Officer Haleas from October 29, 2005 until the present.

Class B, which plaintiff describes as a "Brady due process claim" is defined as:

3

> All people who (1) were arrested for driving under the influence by defendant Officer Haleas from October 29, 2005 until the present, (2) sought discovery in their DUI proceeding, and (3) never received exculpatory evidence that Haleas provided false charges, false police reports and provided perjured testimony in his previous DUI arrests.

Fed. R. Civ. P. 23, which governs class actions, requires a two step analysis to determine whether class certification is appropriate. First, plaintiff must satisfy all four requirements of Fed. R. Civ. P. 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993). These elements are a prerequisite to certification and failure to meet any one of the elements precludes certification of the class. Joncek v. Local 714 International of Teamsters Health and Welfare Fund, 1999 WL 755051 at *2 (N.D. Ill. 1999) (and cases cited therein). Additionally, plaintiffs must satisfy one of the conditions of Fed. R. Civ. P. 23(b). Roe v. Publishers Clearing House, Inc., 1999 WL 966977 at *1 (N.D. Ill. 1999). In the instant case, plaintiff attempts to certify under Rule 23(b)(3), which requires that he show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient administration of the controversy." Fed. R. Civ. P. 23(b)(3).

When evaluating whether a party has met its burden of proving that a class should be certified, this court should not consider the merits of the underlying claim, Eisen v. Carlisle and Jacqueline, 417 U.S. 156, 166 (1974), but may "probe behind the pleadings." General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982); Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 676 (7th Cir. 2001). Where factual and legal questions that would "strongly influence the wisdom of class treatment" are disputed, the court will not merely accept

4

plaintiff's assertions as true, but will require some evidence before making a decision. Szabo, 249 F.3d at 675-76.

Courts have implied two prerequisites to class certification that must be satisfied prior to even addressing the requirements of Rule 23(a): (1) the class must be sufficiently defined so that the class is identifiable; and (2) the named representative must fall within the proposed class. Oshana v. Coca-Cola Bottling Co., 225 F.R.D. 575, 580 (N.D. Ill. 2005). Proper definition is crucial for two reasons. First, it allows the court and the parties to anticipate the burdens the case will impose on them. Second, it ensures that the suit will benefit only deserving individuals. The class definition "cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf." Id. (quoting Guillory v. American Tobacco Co., 2001 WL 290603 (N.D. Ill. 2001). Certification should be denied if the court is required to conduct individual inquiries to determine whether each potential class member falls within the class. Sandoval v. City of Chicago, 2007 WL 3087136 at *2 (N.D. Ill. 2007).

In the instant case, both proposed classes fail to satisfy these initial prerequisites. In Class A, plaintiff seeks to represent everyone that Haleas arrested for DUI from October 29, 2005 to the present. Not everyone in that proposed class, however, has standing to maintain the action on their own. For example, the proposed definition assumes that Haleas lacked probable cause for every single DUI arrest he made in that time period. The complaint does not even make that allegation and there is, of course, no way to make that determination short of individual inquiries into the circumstances of each individual arrest. The proposed class also likely includes persons who have been convicted of the DUI charge and have not yet had that conviction overturned on appeal or vacated by the trial court. Those persons' claims, which are

necessarily based on a false arrest by Haleas, would be barred by Heck v. Humphry, 512 U.S. 477 (1994), which holds that the plaintiff in an action under 42 U.S.C. § 1983 may not pursue a claim for relief that implies the invalidity of a criminal conviction, unless that conviction has been set aside by appeal, collateral review, or pardon.

Proposed Class B, which is really a subclass of Class A, suffers from the same type of infirmity. It includes anyone who Haleas arrested for DUI and who sought but was not given discovery of exculpatory evidence. The class obviously includes persons who went to trial and were convicted, persons who went to trial and were not convicted, and persons whose cases were resolved in some manner short of trial. According to plaintiff, anyone who was represented by a public defender sought discovery. Therefore the class likely includes a large number of the cases that were nolle prossed or dismissed in 2008. The Class B claim is based, however, on a violation of the requirements of Brady v. Maryland, 373 U.S. 83, 87 (1963), in the underlying criminal DUI cases. Brady, requires that the prosecution turn over any material, favorable evidence to the defense. See Ienco v. Angarone, 429 F.3d 680, 683 (7th Cir. 2005). Brady, however, does not require pretrial disclosure. It requires only that disclosure not come so late as to prevent the defendant from receiving a fair trial. U.S. v. Grintjes, 237 F.3d 876, 880 (7th Cir. 2001). Therefore, anyone whose DUI case was resolved short of trial, including all of the cases the State Attorney nolle prossed or dismissed (including plaintiff's), have no claim for a violation under Brady.

Moreover, to recover under § 1983 for an underlying Brady violation, a plaintiff must establish that he would not have been convicted of the underlying charge if the evidence had been disclosed. See Rodriguez v. Woodall, 189 Fed. Appx. 522, 526 (7th Cir. 2006). Therefore,

6

only those persons who were initially convicted at trial can assert a § 1983 claim based on a Brady violation. Plaintiff was never convicted and thus has no claim and is not a member of the class.

Plaintiff's proposed definitions and supporting memoranda of demonstrate a fundamental misunderstanding of a Monell claim. Because municipal liability under § 1983 cannot be founded on the doctrine of respondeat superior, plaintiff must establish that he suffered a constitutional deprivation and that that deprivation occurred as a result of a municipal policy. Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80 (1986). The instant complaint alleges that Haleas' actions "were done pursuant to one or more defacto policies, practice and/or customs of the City," including failing to investigate allegations of police misconduct and failure to discipline police misconduct. The complaint further alleges that the City's policies encouraged Haleas to commit the alleged wrongful acts. Thus, the complaint properly alleges that the City's policies allowed Haleas to remain on the street and allowed him to continue to violate citizen's constitutional rights. Only those persons whose rights were violated by Haleas, however, would have a claim against the City under Monell.

Yet, in his memoranda, plaintiff argues that the individual facts of each arrest are unimportant because it is the city's standardized conduct that caused the injury. Therefore, plaintiff argues that anyone arrested by Haleas has a Monell claim, even if the arrest was totally proper. Indeed, plaintiff suggests that there are class members who may not have a claim against Haleas, but would still have a claim against the City. With respect to Class A this is simply wrong. The City's policy must have caused Haleas' underlying violation of the plaintiff's

7

constitutional rights. Absent an underlying constitutional violation by Haleas, there can be no Monell claim. Monell, 436 U.S. at 690-91.[1]

For the reasons described above, the court concludes that both proposed classes are overbroad and unmanageable. For those same reasons plaintiff cannot demonstrate commonality under Fed. R. Civ. P. 23(a)(2) and cannot demonstrate that common legal or factual questions of the class predominate over the individual questions such that class action treatment is the superior method for addressing the claim. Fed. R. Civ. P. 23(b)(3). Accordingly, plaintiff's motion for class certification is denied. Plaintiff's motion to strike Haleas response (Docket No. 124) is also denied. This case is set for a report on status on September 16, 2009.

**ENTER:** September 2, 2009

_____
Robert W. Gettleman
United States District Judge

---

[1] It is possible that persons properly arrested for DUI by Haleas could nonetheless be a member of Class B in that they asked for but did not receive Brady materials in their underlying DUI trial. It is doubtful that a Brady claim can even be brought against the City, however, given that plaintiff admits that the information sought was in the hands of the State's Attorney. It is the State Attorney who had the duty to disclose under Brady.

8